**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SELENA CHESSER                                                                                          PLAINTIFF

V.                                         4:13CV00153-JJV

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

      Plaintiff, Selena Chesser, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for supplemental security income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      BACKGROUND**

      On July 29, 2010, Ms. Chesser protectively filed for SSI and DIB benefits due to nerve damage in her feet, migraines, arthritis, degenerative discs in her neck, anxiety, and depression. (Tr. 149) Ms. Chesser's claims were denied initially and upon reconsideration. At her request, an Administrative Law Judge ("ALJ") held a hearing on November 16, 2011, where Ms. Chesser appeared with her lawyer. (Tr. 24) At the hearing, the ALJ heard testimony from Ms. Chesser and a vocational experts ("VE"). (Tr. 25-76)

      The ALJ issued a decision on February 10, 2012, finding that Ms. Chesser was not disabled under the Act. (Tr. 8-19) The Appeals Council denied Ms. Chesser's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Chesser, who was forty-seven years old at the time of the hearing, has an associates degree. (Tr. 29) She has past relevant work as a dental assistant, waitress, electrician laborer, and craft store owner. (Tr. 17-18)

## II. DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Ms. Chesser had not engaged in substantial gainful activity since July 10, 2010, and she had the following severe impairments: right side hallux limitus, deformity of the right second toe, degenerative disc disease of cervical spine, degenerative disc disease of thoracic spine with herniation, mild facet arthropathy of lumbar spine, pain disorder, depression, and anxiety. (Tr. 10) However, the ALJ found that Ms. Chesser did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 13)

According to the ALJ, Ms. Chesser has the residual functional capacity ("RFC") to perform light work, but "she is limited to unskilled work, which is work where interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote with few variables and uses little judgment; and the supervision required is simple, direct, and concrete." (Tr. 14) The VE testified that the jobs available with these limitations were cashier and production assembler. (Tr. 72)

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) (2005).

[2]20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

After considering the VE's testimony, the ALJ determined that Ms. Chesser could perform a significant number of jobs existing in the national economy, and found that Ms. Chesser was not disabled.

## III. ANALYSIS

### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. Ms. Chesser's Arguments for Reversal

Ms. Chesser asserts that the Commissioner's decision should be reversed because it is not support by substantial evidence. Specifically, Ms. Chesser contends that the ALJ (1) should have obtained a consultative examination regarding functional limitations; (2) failed to include non-severe impairments in the RFC; (3) erred in dismissing the treating psychiatrist's opinions; (4) lacked substantial evidence to support his findings; and (5) relied on VE testimony that conflicted with the Dictionary of Occupational Titles. (Doc. No. 10)

#### 1. Consultative Exam

Ms. Chesser contends that the only opinions relied on by the ALJ in determining her functional limitations were by non-examining state agency physicians, which do not provide substantial evidence to support the ALJ's decision. Since the reports are from October 20, 2010, and October 22, 2010, and the hearing was in November 2011, Ms. Chesser argues that the ALJ cannot rely on the assessments. (Tr. 482, 494)  The case she cites is not exactly on point, since that court frowned on the old assessments, because they were relied on "to the exclusion of subsequent medical, nonmedical, and testimonial evidence that was consistent with [the claimant's] complaints . . . ."[3]

Here, the records subsequent to the state agency physicians' opinions were consistent with their findings in 2010.  Furthermore, Ms. Chesser points to no evidence that would support her claim that her condition significantly worsened in the period after the reports.  Additionally, Dr. Brown did an assessment in February 2011, which affirmed the 2010 findings. (Tr. 870)  Finally, the ALJ did not rely solely on the reports.  Instead, he thoroughly reviewed her medical history and also noted that the findings were "not contradicted by a treating provider." (Tr. 17)  Again, in her brief, Ms. Chesser provide no evidence to the contrary.

    2.    Non-severe Impairments

Ms. Chesser asserts the ALJ erroneously failed to include her non-severe impairments – "headaches, both tension and migraine" – in the RFC. (Doc. No. 10)  Yet, the ALJ properly discounted these claims, since the medical evidence revealed Ms. Chesser's headaches were controlled with medication (and by cessation of prescription opiates).  In June 2010, she started medication that she claimed "helped relieve[] the headaches" and in mid-February 2011, she advised

---

[3]*Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995).

her doctor that she was no longer taking her medications and the "headaches are not bothering her as much anymore . . ." (Tr. 919-920)

        3.      Treating Psychiatrist's Opinions

Ms. Chesser contends that her mental health professionals repeatedly gave her GAF scores of 48 to 50, and the ALJ erred by giving these scores little weight. (Doc. No. 10)

Notably, the GAF scores Ms. Chesser relies on were from November 2009 through November 2010 (a year before the hearing), and she failed to mention her GAF score from May 2011 was 55. (Tr. 289, 345, 383, 429, 596, 1010) At that May appointment, she also admitted her mental health treatment had "been limited to medications only" and she had "not kept several appointments." (Tr. 1009) In September 2011, she again cancelled her appointment with her mental health provider. (Tr. 980) So, by the time of the hearing, Ms. Chesser had not had mental health counseling in six months.

Additionally, the ALJ specifically addressed all of the GAF scores (including the 55), and noted they were inconsistent with the record as a whole. (Tr. 17) *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) (an ALJ is permitted to disregard GAF scores when they conflict with the medical evidence and the claimant's functional abilities).

        4.      Substantial Evidence in the Record

Ms. Chesser asserts that the ALJ's decision is unsupported by substantial evidence, and points out all the factors that work in her favor – she uses a cane, joint belt for support, a lumbar hugger, and a TENS unit; she takes pain medication, has had physical therapy, and has had surgery on her foot. Ms. Chesser also points out that she faces another surgery on her foot and surgery on her back. However, the issue is not whether there is substantial evidence to support the opposite

outcome – that is, that Ms. Chesser is disabled – but, rather, was there substantial evidence to support the ALJ's decision. *Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.").

There were many facts that would allow the ALJ to question Ms. Chesser's credibility regarding the severity of her medical issues. For example:

(1) Ms. Chesser was let go from her last several jobs, not because of her disabilities, but because she had an altercation with a coworker, her register came up short, and she simply did not like sitting in front of the computer. (Tr. 745) The ALJ recognized that "[t]his suggests that her continuing unemployment may be for reasons other than disabling medical conditions." (Tr. 15) Also worth noting is that in December 2010, several months after her alleged onset date (and her toe surgery), Ms. Chesser continued to look for employment. (Tr. 550, 559)

(2) Ms. Chesser had surgery on her toe in August 2010. Yet, contrary to doctor's orders, she did a lot of walking immediately after her toe surgery because she didn't have a car. (Tr. 560) Additionally, in September 2010, Ms. Chesser's podiatrist advised her that she would get no more pain medication and "[i]f that much pain is present, it is due to patient being non-compliant and performing too much weight bearing activity." (Tr. 631)

(3) In February 2011, Ms. Chesser delayed a second surgery on her toe/foot because she was making eight-hour drives to Tennessee to care for her ailing father. (Tr. 923) Though it is not clear whether she was riding or driving, this type of activity of daily living is inconsistent with the severity of pain claimed by Ms. Chesser. Additionally, as of September 2011, Ms. Chesser still had not had the foot surgery that her doctor thought had a "reasonable chance to improve her function

and decrease her pain . . . ."  (Tr. 969)  She testified at the November 2011 hearing that she still had not had the surgery.  (Tr. 63)

(4)     Ms. Chesser still has not had the recommended back surgery.  As Ms. Chesser points out, there were no surgeons available in January 2011.  However, her doctors expected "adequate neurosurgical coverage" by February 1, 2011.  (Tr. 1024)  As of the hearing, Ms. Chesser still had not had surgery on her back.  Additionally, Ms. Chesser has a history of not doing the exercises for her back as directed.  (Tr. 923)  The therapist noted that Ms. Chesser "has not performed [exercises] consistently yet to determine effectiveness."  (*Id.*)

(5)     In 2010, Ms. Chesser reported that she had been dealing with her headaches for the last eighteen years, but she was capable of working that entire time.  (Tr. 267)

(6)     Ms. Chesser testified that she did very little physical activity.  But the ALJ, after listing several daily activities Ms. Chesser can perform, concluded that she has only mild restrictions of daily living.  (Tr. 13) As mentioned earlier, she was repeatedly driving eight hours to Tennessee to help care for her ailing father.  Also, in September 2011, she put off surgery again because she was "having to take care of grandchildren."  The doctor advised that Ms. Chesser "needs to get her home situation in order and when she has about 6 weeks where she can stay off her foot, to let [him] know and we could consider doing surgery."  (Tr. 979)

       5.     VE's Testimony

Ms. Chesser contends there is a conflict between the RFC limitation ("interpersonal contact is incidental to the work performed") and the cashier II job recommended by the VE.  (Doc. No. 10). Even if the Court accepts Ms. Chesser's argument, the VE also testified that Ms. Chesser could be a production assembler, which means she could perform a significant number of jobs existing in the

national economy.  Accordingly, this is a non-issue.

## IV.     CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, the decision of the Commissioner is affirmend and Ms. Chesser's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 12th day of August, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE